IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Milo Earl Tudor, Jr., #243378, | ) | C/A No.: 2:98-1927-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Michael Moore, Director of SCDC; | ) | |
| Doug Catoe, Assistant Director of | ) | |
| SCDC; Rickie Harrison, Warden of | ) | **O R D E R** |
| Kershaw Correctional Institution; | ) | |
| Stann Burtt, Associate Warden of | ) | |
| Kershaw Correctional Institution; | ) | |
| and Robin Chavis, Associate | ) | |
| Warden of Kershaw Correctional | ) | |
| Institution, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This action was originally instituted pro se by Milo Earl Tudor, Jr., ("Plaintiff") pursuant to 42

U.S.C. § 1983 against officials of the South Carolina Department of Corrections ("Defendants") seeking

equitable relief in the form of an order that he be housed in a unit free of environmental tobacco smoke

("ETS"), and seeking damages for allegedly exposing him to an unreasonable health risk. The plaintiff

asserts he has been diagnosed with asthma, and that his condition requires frequent treatment. He

claims that his ongoing exposure to unreasonably high levels of ETS has increased his dependence on

a prescription Albuterol Inhaler, caused him severe asthma attacks on several occasions, and causes him

chronic discomfort and sickness. The plaintiff alleges in his complaint that his exposure to ETS in the

Magnolia East Wing of Kershaw Correctional Institution, and his increasing use of and dependence

upon the Albuterol Inhaler, poses a severe health risk.

Specifically, the plaintiff states in his complaint that "the defendants, did with deliberate

indifference/cruel and unusual punishment with malice, and aforethought expose plaintiff to levels of environmental tobacco smoke (ETS) that is possing (sic) an unreasonable, serious risk to plaintiff's present, and future health."

At the time the plaintiff filed his complaint, he was an inmate at Kershaw Correctional Institute, and was transferred there on September 17, 1997. On December 16, 1997, Warden Harrison designated Magnolia East, a wing of Kershaw Correctional Institute, as a non-smoking wing and granted inmates with medical conditions, such as asthma, first priority for moving. Thereafter, the plaintiff was transferred to Magnolia East on December 23, 1997, upon referral by the medical department. However, smoking inmates were subsequently moved into Magnolia East, due to overcrowding at the facility. It is unclear from the record before the court when this began to occur.

## Procedural History

In accordance with the court's order of reference, 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(d) (D.S.C.), this matter was referred to United States Magistrate Judge Robert S. Carr for pre-trial proceedings. The defendants filed a motion for summary judgment on September 10, 1999. The plaintiff also filed a motion for summary judgment on September 27, 1999. The Magistrate Judge issued a Report and Recommendation analyzing the parties' position on January 24, 2000, and recommended that the defendants' and plaintiff's motions be denied on the grounds that there were genuine issues of material fact making summary judgment inappropriate. Objections were filed, and on March 6, 2000, The Honorable C. Weston Houck, adopted the Magistrate Judge's recommendation. The defendants filed a motion to reconsider on March 20, 2000, which Judge Houck denied.

On March 7, 2000, the defendants filed a second motion for summary judgment. The plaintiff responded and filed a motion for appointment of counsel. On February 9, 2001, Judge Houck referred

the defendants' second motion for summary judgment and the plaintiff's motion for appointment of counsel to the Magistrate Judge for consideration. On February 22, 2001, the Magistrate Judge filed a Report and Recommendation in which he recommended that the defendants' second motion for summary judgment be granted and the plaintiff's motion for appointment of counsel be denied as moot. The plaintiff filed objections to the Report on March 16, 2001.

On July 23, 2001, Judge Houck issued an Order statistically staying the plaintiff's motion for appointment of counsel and defendants' motion for summary judgment. The Order further required defendants to file with the court, a report setting forth in quantitative terms, the results of a test and analysis of the air quality in Magnolia East, a building which is part of Kershaw Correctional Institution, in which plaintiff was being housed. Judge Houck's Order further directed that the report must specifically reference the levels of ETS found to be present in Magnolia East and directed that the report must be prepared by an expert qualified to perform such test. Further, Judge Houck ordered that the defendants provide a report by a physician who is a specialist in the area of asthma and/or respiratory disease, detailing the severity of potential harm caused by levels of ETS found in Magnolia East and the likelihood of such injury to the plaintiff, based upon his current medical condition. The physician was to be provided the results of the air quality test, the entire medical record of the plaintiff, and was granted the discretion of personally examining and testing the plaintiff as necessary. Finally, Judge Houck directed the defendants to provide a listing of all persons with whom the plaintiff had shared a cell while housed at Magnolia East, noting which of those persons were smokers, as well as the duration of each person's stay with the plaintiff.

On or about March 21, 2002, the defendants provided Judge Houck with the requested documentation. In the Summer of 2002, the plaintiff was transferred from Kershaw Correctional

Institute to McCormick Correctional Institute.

On October 7, 2003, the case was re-assigned from Judge Houck to The Honorable Henry F. Floyd.  On April 26, 2004, Judge Floyd held a pre-trial hearing in this matter.  Judge Floyd inquired as to whether either side had any additional evidence to present prior to ruling on the defendants' second motion for summary judgment.  The defendants then filed one additional affidavit; that of Warden Collie Rushton of McCormick Correctional Institution, where the plaintiff has been transferred.  At the conclusion of the hearing, Judge Floyd announced that a decision would be rendered on the defendants' pending second motion for summary judgment within thirty (30) days.  However, no order was issued.

On July 14, 2004, this case was transferred from Judge Floyd to the undersigned.  On November 29, 2004, the undersigned granted the plaintiff's motion for appointment of counsel and also ordered mediation to be conducted.  On December 6, 2004, the defendants filed a motion for reconsideration of the order appointing counsel.  On December 13, 2004, the undersigned denied the defendants' motion for reconsideration.  On May 26, 2005, the court entertained oral arguments on the defendants' second motion for summary judgment.  The court took the motion under advisement and rules as follows:

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts."  Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine

4

issue of material fact, and the Court must view the evidence before it and the inferences to be drawn

therefrom in the light most favorable to the nonmoving party.  United States v. Diebold, Inc., 369 U.S.

654, 655 (1962).  When the defendant is the moving party and the plaintiff has the ultimate burden of

proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks

sufficient evidence.  The nonmoving party, here the plaintiff, must then go beyond the pleadings and

designate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see also

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building

of one inference upon another."  Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).  Therefore, "[m]ere

unsupported speculation . . . is not enough to defeat a summary judgment motion."  Ennis v. National

Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

## Discussion

In McIntyre v. Robinson, 126 F.Supp.2d  394, 400 (D.Maryland 2000), the district court found

that:

> [w]ith regard to medical attention due a prisoner, prison officials can violate the Eighth
> Amendment in **two** ways.  The officials can be deliberately indifferent to the prisoner's
> *existing* serious medical needs, see  Estelle v. Gamble, 429 U.S. 97 (1976), or they can
> be deliberately indifferent to conditions posing a substantial risk of serious *future* harm.
> See Helling v. McKinney, 509 U.S. 25 (1993).

(emphasis added).  In the complaint, the plaintiff makes allegations regarding both his present and

future heath.  Therefore, the court will assume that the plaintiff is proceeding under both theories.

## A.  Existing Serious Medical Need

The court begins with the plaintiff's allegations that the defendants have been deliberately

indifferent to his *existing* serious medical need.  An Eighth Amendment claim must contain both an

5

objective and a subjective component.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994); Brice v. Virginia Beach Correctional Ctr., 58 F.3d 101, 104 (4th Cir. 1995).

### 1)  Objective Component

The Fourth Circuit Court of Appeals stated in De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003) (quoting Hudson v. McMillian, 503 U.S. 1, 5 (1992)), that "[t]he showing necessary to demonstrate that particular conduct by prison officials is sufficiently serious to constitute cruel and unusual punishment 'varies according to the nature of the alleged constitutional violation.'"

In this case, the plaintiff must establish that he has a serious medical need.  See Farmer, 511 U.S. at 837; Brice, 58 F.3d at 104.  As to what constitutes a serious medical need, the district court in Finley v. Trent, 955 F.Supp. 642, 646 (N.D. W. Va. 1997) (internal citations omitted), stated that "[a] 'serious medical need' is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious even a layperson would easily recognize the necessity for a doctor's attention.'"

Furthermore, "[t]he seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment.  For instance, Estelle makes clear that if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is one of serious nature contemplated by the eighth amendment."  Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987) (internal citations omitted).  Likewise, "to sustain a claim that exposure to ETS aggravated a current medical condition, the inmate must produce competent evidence of that medical condition."  McIntyre, 126 F.Supp.2d at 401.

In this case, the defendants argue in their motion that the plaintiff has not shown facts to support a reasonable finding that he is suffering from a serious medical need for which he is not being afforded

adequate medical attention or that the conditions of his confinement pose a threat to his health.

However, the plaintiff has provided his medical records from physicians at the prison which indicate that he suffers from asthma as he alleges in his complaint. The medical records also reveal that the prison physician noted that the plaintiff should not be exposed to second-hand cigarette smoke. In a health summary for classification/assignment on October 28, 1997, a prison physician stated that the plaintiff should not be exposed to environmental pollutants or allergens. In a health summary for classification/assignment, on February 19, 1999, a prison physician stated that the plaintiff should be assigned a no smoking room. Additionally, a report from Dr. Robert Galphin, Jr., the specialist who examined the plaintiff as a result of Judge Houck's Order, states that the plaintiff may have reactive airways disease. Dr. Galphin explained that this is a condition where the individual develops sensitive airways and when exposed to certain strong or noxious substances such as cigarette smoke, fumes, odors, may develop an episode of bronchospasm. Dr. Galphin states this can be a condition which will progress if the individual continues to be exposed to these substances. Therefore, Dr Galphin recommended that the plaintiff be removed from areas where he would be exposed to these substances.

Viewing the motion for summary judgment in the light most favorable to the plaintiff, he can show through these medical records that he has asthma and/or reactive airways disease and that they were aggravated by ETS. Therefore, for the purposes of this motion, the plaintiff satisfies the objective component.

### 2)  Subjective Component

The plaintiff must further establish that the accused prison officials were deliberately indifferent to his serious medical need in order to satisfy the subjective component of his claim. See Farmer, 511 U.S. at 837; Brice, 58 F.3d at 104.

7

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle, 429 U.S. at 102-103. This is true whether the indifference is manifested by prison doctors in response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed. Id. at 104-105. Deliberate indifference exists when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

As far as the subjective component of the prison officials being deliberately indifferent to his alleged *existing* serious medical need, the plaintiff has produced multiple grievance forms which indicate he complained many times of problems he was having with smoke. On some occasions, the plaintiff complained that other inmates placed in his cell were smoking. On some occasions, the plaintiff complained of smoke coming through the ventilation systems. On other occasions, the plaintiff complained of other inmates smoking in the common areas of the non-smoking ward where the plaintiff was assigned.

The above mentioned health summaries show that the plaintiff had a need to be free from smoke as treatment for his *existing* serious medical need. These summaries, coupled with all of the above mentioned grievances, possibly show that the prison officials were aware of the plaintiff's *existing* serious medical need, the problems associated with it, and the treatment recommended, and were indifferent to such.

Furthermore, the defendants have admitted creating a non-smoking wing, however, due to overcrowding in the prison system smokers were moved into the non-smoking wing. Allegedly, at both

8

Kershaw and McCormick there are non-smoking policies in effect for certain designated areas, however, it is alleged that the non-smoking policies are either not fully enforced or there exists a difficulty in enforcing them.  It is unclear from the record before the court whether the plaintiff had cellmates at times who were permitted to smoke in the cell at Kershaw Correctional Institute.  The defendants appear to argue that at both Kershaw and McCormick they did not allow any smoking in the cells, even though they acknowledge that the plaintiff may have been housed with an inmate who was a smoker.  However, the court notes again that the defendants have expressed difficulty in enforcement of their non-smoking policies.

When  viewed in the light most favorable to the plaintiff, as the court is required to do, the facts arguably show that the plaintiff had an *existing* serious medical need and the defendants were aware of and deliberately indifferent to that *existing* serious medical need.  Therefore, as to the claim of deliberate indifference to an *existing* serious medical need, the court finds  that the defendants' second motion for summary judgment should be denied.

Although there was no allegation in the complaint about or against any official at McCormick Correctional Institute, the plaintiff filed a Response with the court after his transfer to McCormick, in which he makes similar allegations, about the confinement at McCormick, as those made in his complaint regarding Kershaw.  During the hearing on this motion, plaintiff's counsel acknowledged that although the plaintiff's complaint does not reference McCormick since he was at Kershaw when the complaint was filed, he now makes similar allegations as to McCormick and desires to raise them.  Thus, out of the sake of judicial economy the court will consider them, and finds that the plaintiff could also possibly have a claim of deliberate indifference to an *existing* serious medical need as to his confinement at McCormick Correctional Institute as well.

9

**B.  Risk Of Serious Future Harm**

The court next considers the second way an inmate can prove an Eighth Amendment violation: an allegation that the defendants were deliberately indifferent to conditions posing a substantial risk of *future* harm to the plaintiff.

In <u>Helling</u>, *supra*, the United States Supreme Court addressed this issue in the context of prisoners and ETS conditions.  The Court held that a prisoner states a cause of action under the Eighth Amendment by alleging that prison officials have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his *future* health.  <u>Id</u>. at 35.  Such a claim involves both objective and subjective components.  The objective component requires that the inmate prove: (1) that he himself has been exposed to unreasonably high levels of second-hand smoke; and (2) that the exposure creates a risk of harm so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.  <u>Id.</u> at 36.___ The subjective component requires proof that the defendants acted "with deliberate indifference" to the plaintiff's exposure to this risk.  <u>Id</u>.

In this case, the defendants argue in their motion that the plaintiff has not shown evidence of either the objective or subjective components entitling him to relief.

**1)  Kershaw Correctional Institute**

As mentioned above, Judge Houck ordered the South Carolina Department of Corrections to have ETS tests conducted at the Magnolia East Unit of Kershaw Correctional Institution. This was the unit the plaintiff was housed at that time.  A test was conducted on September 20, 2001, which reflected ETS readings that were within those permitted by all recognizable standards in all areas of Magnolia East, except the precise cell the plaintiff was being housed.  Only, in that cell were the ETS readings significantly higher than those permitted by all recognizable standards.  Thereafter, the plaintiff was re-

10

assigned to McCormick Correctional Institutional and another test was conducted at Kershaw Correctional Institution. This test was conducted on January 9, 2002, and revealed that all areas tested, including the precise cell where the plaintiff was previously housed, had ETS levels within those permitted by all recognizable standards.

The defendants stated at the hearing on this motion that they believed the high tests results in the plaintiff's cell on September 20, 2001, may have been caused by some type of tampering by the plaintiff or otherwise an aberration, since only the specific cell and no other location showed the unusual reading.

Similarly, the plaintiff states in a letter to the court, that the January, 2002, test results were controlled or manipulated by the defendants.

Nevertheless, viewing the motion in the light most favorable to the plaintiff, ETS levels in his cell according to the first test were in excess of all recognized standards. Because of the conflicting readings, the court finds that there is an issue of fact as to the levels of ETS revealed in the respective tests conducted at Kershaw Correctional Institution.

Accordingly, issues of fact exist and the undersigned cannot decide as a matter of law that the plaintiff will not be able to prove the objective component of his claim. Assuming for the purposes of discussion that the plaintiff proves the objective component of his claim, the court also finds that the plaintiff could possibly satisfy the subjective component if viewed in the light most favorable to him. There is evidence in the record that the defendants had a non-smoking policy in effect at the time this complaint was filed, and otherwise made some efforts to prevent the plaintiff's exposure to ETS. However, the record also contains evidence that the defendants did not enforce their non-smoking policy or were otherwise deliberately indifferent to the plaintiff's exposure to a risk of serious damage

11

to his *future* health.

For the above mentioned reasons, the court finds there is a genuine issue of material fact and denies the defendants' second motion for summary judgment as to the plaintiff's claim of deliberate indifference to an unreasonable risk of damage to *future* health, as the claim relates to his incarceration at the Kershaw Correctional Institute.  Therefore, the plaintiff can go forward with his claim for damages in this regard.  However, the plaintiff's request in the complaint for injunctive relief at Kershaw Correctional Institute is now moot because he has been transferred to McCormick Correctional Institute.

### 2)  McCormick Correctional Institute

As mentioned above, the plaintiff has been re-assigned to the McCormick Correctional Institute. On April 26, 2004, since the plaintiff's transfer, the defendants submitted an affidavit of the Warden at McCormick Correctional Institute, Colie L. Rushton, which states that when the plaintiff was transferred to McCormick he was instructed that the plaintiff was to be confined in a smoke free environment.  Mr. Rushton states that in response to that instruction he created a complete smoke free housing unit where the plaintiff is housed along with other inmates who signed statements verifying that they were non-smokers.  Mr. Rushton further states that since being placed in the smoke free housing unit at McCormick, the plaintiff has not been exposed to ETS.

The plaintiff filed a Response in which he states that he has in fact been transferred to a non-smoking unit at McCormick, however, he alleges that in that non-smoking unit approximately 75% of the inmates smoke.  The plaintiff states that he is presently sharing a room with a smoker, however, the plaintiff admits that the inmate does not smoke in their cell.

As mentioned above, for this type of claim, the objective component requires that the plaintiff

show: (1) that he himself is being exposed to unreasonably high levels of second-hand smoke; and (2) that the exposure creates a risk of harm so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. Id. at 36.

The court finds that the plaintiff has offered no objective scientific or statistical evidence which shows that he is being exposed to unreasonably high levels of ETS at McCormick.  Under the objective component of this claim, it is the plaintiff's burden to prove such.  The plaintiff only offers his subjective impression that many of the inmates at McCormick smoke, which he alleges establishes that he is being exposed to unreasonably high levels of ETS.  Yet, the plaintiff admits that his cellmate does not smoke in their cell.

As the court finds that the plaintiff cannot meet one of the components necessary to prove his claim it follows that the defendants' second motion for summary judgment is granted as to plaintiff's claim of deliberate indifference to conditions posing a substantial risk of serious *future* harm, as the claim relates to his incarceration at the McCormick Correctional Institute.

<u>Conclusion</u>

For the reasons stated above, the court finds that the defendants second motion for summary judgment is **GRANTED** in part and **DENIED** in part.

**AND IT IS SO ORDERED.**


 s/ R.Bryan Harwell_____
R. Bryan Harwell
United States District Judge


June 28, 2005
Florence, South Carolina